NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

In Re: LEDI NATRACHVILI,

    Debtor.

Case No. 20-19475 (MBK)

Chapter 13

In Re: PETER C. CARPENA,

    Debtor.

Case No. 20-10782 (KCF)

Chapter 7

Joseph S. Marko,

    Plaintiff,

v.

Ledi Natrachvili, et al.

    Defendants.

Adv. Pro. No. 21-01390 (MBK)
Adv. Pro. No. 21-01389 (MBK)

Trial Date: November 28, 2022

**Joseph S. Marko**
292 Denise Lane
East Stroudsburg, PA 18302
*Plaintiff, Self Represented*[1]

**Edward Hanratty, Esq.**
57 West Main Street
Ste 2nd Floor, Suite 2d
Freehold, NJ 07728
*Counsel for Debtor-Defendants*

## MEMORANDUM DECISION

This matter comes before the Court upon the Complaint filed by Plaintiff, Joseph S. Marko ("Plaintiff" or "Mr. Marko"). As set forth below, the Complaint objects to the discharge of debt

---

[1] Mr. Marko was initially represented by attorney Philip Gutworth. Sadly, Mr. Gutworth suffered a medical emergency in May 2022 and was unable to proceed with representation. Mr. Marko opted to proceed pro se.

allegedly owed to Mr. Marko by Ledi Natrachvili ("Ms. Natrachvili"), Forrest Construction Group LLC d/b/a Forrest Construction Group ("FCG"), and Peter C. Carpena ("Mr. Carpena") (collectively, "Defendants") under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), and the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, et seq.

The Court conducted the trial in this matter on November 28, 2022. During trial, the Court accepted several exhibits into evidence, excluded certain exhibits from the record based on objections raised, and heard direct testimony from Mr. Marko, cross-examination, and brief re-direct. For the reasons expressed below, the Court grants judgment in favor of the Debtor-Defendants. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[2]

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

## II. Background and Procedural History

At the core of this case is a loan agreement between Mr. Marko as lender, and FCG as borrower. The parties' agreement is memorialized in a promissory note (the "Promissory Note")

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

that was executed on December 11, 2018. *Plaintiff's Exhibit* 9.  Specifically, the document is signed by Mr. Marko (as lender), Mr. Carpena (as managing member of FCG), and was notarized by Ms. Natrachvili (as notary public of the State of New Jersey). *Id.*  Through this Promissory Note, Mr. Marko agreed to lend $25,000 to FCG, and FCG agreed to pay a maximum return of $30,000 to Mr. Marko within six months.  The Promissory Note did not specify the use of the funds, nor did it place any restrictions.

FCG and Mr. Carpena failed to make good on the promise and did not return any funds to Mr. Marko—let alone his initial investment plus interest.  Mr. Marko commenced legal action; however, Mr. Carpena filed for chapter 7 bankruptcy in January 2020: Case No. 20-10782 (KCF).  A few months later, Ms. Natrachvili filed for chapter 13 bankruptcy in August 2020: Case No. 20-19475 (MBK).  Mr. Carpena's bankruptcy case was dismissed on June 25, 2020 for failure to pay the final filing fee installment, but was reopened on November 17, 2020.  Shortly thereafter, Mr. Carpena received his chapter 7 discharge.  Meanwhile, Ms. Natrachvili confirmed a chapter 13 plan on March 2, 2021.  On October 6, 2021, Mr. Marko filed the instant adversary proceeding in both Mr. Carpena's chapter 7 case—which was reopened to accommodate the adversary proceeding—and in Ms. Natrachvili's chapter 13 case: Adv. Pro. Nos. 21-01389 and 21-01390, respectively.  In December 2021, the adversary proceedings were consolidated and proceed before this Court.

The Court appointed Donald F. Campbell Jr. as mediator.  However, the parties could not agree as to Mr. Campbell's fees, and he withdrew.  The Court proceeded with trial on November

28, 2022. During trial, Mr. Marko represented himself, pro se. Defendants chose not to appear in person and were represented by counsel, Mr. Hanratty.

### III. Legal Discussion

At the beginning of trial, the Court dismissed Count IV of Mr. Marko's complaint, which alleged claims under the New Jersey Consumer Fraud Act. As explained on the record, the New Jersey Consumer Fraud Act is intended to protect consumers who purchase goods or services generally sold to the public at large. *See, e.g.*, *Lawmen Supply Co. of New Jersey, Inc. v. Glock, Inc.*, 330 F. Supp. 3d 1020 (D.N.J. 2018) (citing N.J. STAT. ANN. § 56:8-1 et seq.). The transaction at issue in Mr. Marko's complaint did not involve the sale of goods, services, products, or merchandise. Accordingly, it is dismissed as to all defendants.

As to the remaining three counts—seeking nondischargeability under § 523(a)(2), (a)(4) and (a)(6)—the Court determines that Mr. Marko did not establish the elements necessary to succeed under these claims.

### A. Claims against Ms. Natrachvili

At the close of Mr. Marko's testimony, Mr. Hanratty moved under Rule 52(c) for a judgment on partial findings as to the claims against Ms. Natrachvili. Pursuant to the Rule, the Court declined to render a judgment until the close of evidence. The Court now rules.

Mr. Marko implicates Ms. Natrachvili in his Complaint only to the extent she acted as a public notary and notarized the Promissory Note. Indeed, "[a] notary is a public officer and owes a duty to the public to discharge his or her functions with diligence." *Villanueva v. Brown*, 103 F.3d 1128, 1137 (3d Cir. 1997) (citing *Immerman v. Ostertag*, 83 N.J.Super. 364, 199 A.2d 869,

872–873 (Law Div. 1964)). However, "a notary is not an insurer, and is not liable except for negligence." *Tevrow v. Arowolo*, No. A-3173-13T4, 2015 WL 9694315, at *9 (N.J. Super. Ct. App. Div. Aug. 27, 2015) (citations and quotations omitted). Here, Mr. Marko presented no evidence suggesting Ms. Natrachvili was negligent in her role as notary public. At the parties' request, Ms. Natrachvili notarized the Promissory Note, at which time the signatures were authenticated. Ms. Natrachvili was not a party to the Promissory Note and Mr. Marko did not set forth any facts at trial which implicate Ms. Natrachvili beyond her role as notary public—a role which she discharged adequately. Accordingly, Mr. Marko's claims against Ms. Natrachvili fail and are dismissed.

### B. Claims against FCG

Mr. Marko named FCG as a defendant in this action. It is undisputed that FCG dissolved in 2020. Further, FCG is implicated only to the extent it was an alleged "shell" that Mr. Carpena used to perpetrate fraud against Mr. Marko. As this action seeks a declaration that the debt owing Mr. Marko is nondischargeable, but FCG is not in bankruptcy and not entitled to a discharge in any event, the claims against FCG are dismissed.

### C. Count I - § 523(a)(2)(A)

Section 523(a) of the Bankruptcy Code provides that:

a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, . . . or credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

5

11 U.S.C. § 523(a)(2)(A).

Mr. Marko's Complaint seeks a nondischargeability determination under § 523(a)(2)(A) for fraud. *Complaint* ¶ 4, ECF No. 1; *id*. at ¶ 28, 30. However, the Complaint also references "false and fraudulent representations." *Id.* at ¶ 25. Therefore, the Court will not limit its inquiry to "actual fraud," and will also analyze whether Mr. Marko has established "false pretenses" or "false representations." These terms are not explicitly defined in the Code; nevertheless, the Supreme Court has dictated that "[t]hey are common-law terms, and . . . imply elements that the common law has defined them to include." *Field v. Mans*, 516 U.S. 59, 69, 116 S. Ct. 437, 443, 133 L. Ed. 2d 351 (1995); *see also Molz v. Price*, 613 B.R. 599, 603 (Bankr. D.N.J. 2020). Among these three grounds for nondischargeability, courts in this Circuit often distinguish between "false pretenses" and "false representation" based on whether the debtor's misrepresentation was implied—indicating "false pretense"—or express—indicating "false representation." *See, e.g.*, *In re Williams*, No. 15-23287, 2018 WL 3344174, at *14 (Bankr. D.N.J. July 5, 2018) (collecting cases); *In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *21 (Bankr. D.N.J. Jan. 31, 2018); *In re Witmer*, 541 B.R. 769, 778 (Bankr. M.D. Pa. 2015). The third cause of action under § 523(a)(2)(A), "actual fraud," is defined by the elements of common law fraud. *See Field v. Mans*, 516 U.S. at 443-444; *In re Williams*, 2018 WL 3344174, at *14.

Courts have noted that "[a]lthough the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate proof of false or deceptive conduct, fraudulent intent, and justifiable reliance." *In re Altieri*, No. 11-12819, 2012 WL 3595298, at *2 (Bankr. D.N.J. Aug. 20, 2012) (internal quotations

6

and citations omitted); *see also In re Chung-Hwan Kim*, 2018 WL 671467, at *22. Accordingly, courts generally require that a movant prove some variation of the following elements in order to establish fraud of any type under § 523(a)(2)(A):

>   (1) the debtor obtained money, property or services through a material misrepresentation;
>
>   (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;
>
>   (3) the debtor intended to deceive the creditor;
>
>   (4) the creditor justifiably relied on the debtor's false representations; and
>
>   (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.[3]

*See In re Sachkowsky*, No. 19-20512 (MBK), 2021 WL 4823515, at *3 (Bankr. D.N.J. Oct. 15, 2021); *Molz v. Price*, 613 B.R. at 603; *In re Gallagher*, 2016 WL 4989942, at *2–3 (Bankr. D.N.J. Sept. 9, 2016).[4] These elements must be established by a preponderance of the evidence.

---

[3] This Court notes that there does not exist in the Third Circuit a singular, universally-used test for proving a claim under § 523(a)(2)(A). However, a close inspection of existing case law reveals that all tests require a movant to fulfill the same basic requirements, and the primary differences between the tests are the number of elements which define the test for establishing a claim. *Compare In re Bocchino*, 794 F.3d 376, 381 (3d Cir. 2015) (five elements) *with In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *22 (Bankr. D.N.J. Jan. 31, 2018) (six elements) *and In re Softcheck*, No. 08-23844, 2009 WL 4747527, at *7 (Bankr. D.N.J. Dec. 4, 2009) (ten elements) *and In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (five elements). Because the relevant case law agrees as to what is substantively required to prove a claim under § 523(a)(2)(A), the variation in the number of elements does not have any meaningful impact on the analysis in this case, or on the legal analyses performed by other courts that have addressed a §523(a)(2)(A) claim in this Circuit. Rather, the difference in the number of elements appears to be merely organizational. *Compare In re Bocchino*, 794 F.3d at 381 (including the requirements that the debtor "obtained money, property or services" and that there was "a material misrepresentation" in the same element) *with In re Chung-Hwan Kim*, 2018 WL 671467, at *22 (breaking the requirements that the debtor "obtained money, property or services" and that there was a "material representation" into two separate elements).

[4] The Court notes that several courts within our Circuit—including the Third Circuit itself—have described the fourth element of § 523(a)(2)(A) as requiring "reasonable" reliance. *See, e.g.*, *In re Bocchino*, 794 F.3d at 381 (stating that the movant must show that "the creditor reasonably relied on the debtor's false representations" to establish the fourth element of a claim under § 523(a)(2)(A)); *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (same). However, the Supreme Court has clearly articulated that the type of reliance required to establish fraud under § 523(a)(2)(A) is

*See Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991). "Generally, the provisions of section 523(a) are 'strictly construed against creditors and liberally construed in favor of debtors,' owing to the overriding bankruptcy purpose of granting debtors a fresh start." *In re Gallagher*, 2016 WL 4989942, at *2 (quoting *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir. 1995)).

### 1. False or Reckless Statements

In order to demonstrate nondischargeability under § 523(a)(2)(A), a party must show that the debtor made a representation that he knew at the time was false or that he made with gross recklessness as to its truth. During trial, Mr. Marko pointed to the fact that Mr. Carpena indicated that the Promissory Note was a "perfectly legal document" and invited Mr. Marko to have his attorney look at it. The Court determines that this statement was not false. Indeed, the Promissory Note is a legal document. Unfortunately, FCG defaulted on its terms.

Mr. Marko also cited his belief that Mr. Carpena was untruthful regarding his ownership of property in South Amboy. Specifically, Mr. Marko testified that Mr. Carpena told him that the property in question was the first property *he owned* in a flood zone. Mr. Marko interprets this statement as false because the property was not owned directly by Mr. Carpena and, instead, was owned by Mr. Carpena indirectly through an LLC. The Court finds that this statement was not false in so far as Mr. Carpena indirectly owned the property in question. Moreover, to the extent this statement can be interpreted as false, the Court finds that it is not a material misrepresentation for purposes of § 523(a)(2)(A). It is also unclear how this statement affected Mr. Marko's decision

---

"justifiable" reliance, which is a lower threshold than "reasonable." *Field v. Mans*, 516 U.S. 59, 74–75, 116 S. Ct. 437, 446, 133 L. Ed. 2d 351 (1995) ("[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance.").

to loan the money and/or how it contributed to his damages. In fact, based on Mr. Marko's testimony at trial, it appears that Mr. Carpena's statement regarding ownership of the South Amboy property in the flood zone were made *after* Mr. Marko and FCG had executed the Promissory Note.[5]

Mr. Marko points to emails in which he asserts that Mr. Carpena made false statements regarding the status of various projects. Specifically, Mr. Marko cites a June 7, 2019 email from Mr. Carpena in which he indicates that the project has been "green lit" as there were no objections during "the township meeting last night." *Plaintiff's Exhibit* 12. Mr. Marko testified that this statement was false because the meeting of the South Amboy Redevelopment Agency never occurred. As an initial matter, the email does not refer to a particular project or township meeting. However, even assuming that this statement was false, as Mr. Marko alleges, it was made well after Mr. Marko loaned the funds to FCG. Thus, Mr. Carpena did not obtain any funds from Mr. Marko as a result of these false statements.

Finally, Mr. Marko testified that he was led to believe that he was investing in refurbishment of properties—in other words, the money Mr. Marko lent to FCG would be used to buy, possibly renovate, and ultimately "flip" the properties, with the profit being used to return Mr. Marko's initial investment plus interest. Mr. Marko asserts that this representation was false. He believes the funds were not used for the stated refurbishment purpose and, instead, were used by Mr. Carpena for personal items, vacations, and trips. Mr. Marko bases this opinion on bank statements which he states show the transfer of funds from the LLC to Mr. Carpena, individually,

---

[5] Mr. Marko's testimony at trial indicates that Mr. Carpena made the statements regarding ownership of the South Amboy property while trying to secure an additional $8,500 loan from Mr. Marko.

and which show large withdraws that significantly reduced the $25,000 deposit in a short time period.

However, the bank statements which form the basis of Mr. Marko's opinion were not admitted into the record. And Mr. Marko admitted that he did not have any information as to the status of the funds in question following their withdrawal. In any event, the Court finds that the terms of the parties' loan agreement controls. Mr. Marko concedes that the Promissory Note did not restrict the use of the funds or explicitly identify a purpose for which the funds must be used.

### 2. Intent

To succeed on his claim, Mr. Marko must prove by a preponderance of the evidence that Mr. Carpena—as managing member of FCG—acted with the intent and purpose of deceiving Mr. Marko. "Because a debtor 'will rarely, if ever, admit that deception was his purpose,' intent to deceive may be inferred from the totality of the surrounding facts and circumstances." *In re Hay Phat*, 623 B.R. 371, 379–80 (Bankr. E.D. Pa. 2021) (quoting *Starr v. Reynolds* (*In re Reynolds*), 193 B.R. 195, 200 (D. N.J. 1996) and collecting cases). It is well established that failure to perform as promised, by itself, gives rise to a cause of action for breach of contract, not actionable misrepresentation, fraud, or false pretenses under § 523(a)(2)(A). *See, e.g*, *In re Hay Phat*, 623 B.R. at 380; *In re Williams*, 2018 WL 6132308, at *6; *In re Witmer*, 541 B.R. at 779. Otherwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargeability. *In re Williams*, 2018 WL 6132308, at *6 (citing *In re Giquinto*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008)).

Here, the record does not establish by a preponderance of the evidence that Mr. Carpena possessed an intent to deceive. The crux of Mr. Marko's argument is that Mr. Carpena told him the funds would be used for real estate renovation projects when he actually intended to keep the funds for his own personal use. However, Mr. Marko's own testimony establishes that Mr. Marko owned at least one investment property—albeit indirectly through an LLC. Further, Mr. Marko concedes that he does not know what happened to the funds he loaned. When questioned during trial as to what evidence he could point to in the record to support his contention that Mr. Carpena pursued the transaction with intent to deceive—and never intended to repay the funds that had been borrowed—Mr. Marko replied simply that he has not yet been repaid. He emphasized that it has been over four years since the Promissory Note was executed and there has been no attempt has to pay him back, even partially, or to set up a schedule of repayment. As set forth above, the failure to make good on a contract does not rise to the level of misrepresentation, fraud, or false pretenses under § 523(a)(2)(A). *See, e.g, In re Hay Phat*, 623 B.R. at 380; *In re Williams*, 2018 WL 6132308, at \*6; *In re Witmer*, 541 B.R. at 779.

Undeniably, FCG defaulted on its contract with Mr. Marko. And if Mr. Marko's testimony is to be believed, Mr. Carpena may have been less-than-truthful about the status of certain construction projects—particularly regarding approval of a project from the South Amboy Redevelopment Agency following a township meeting. The Court further considers that Mr. Carpena did not appear to defend himself and explain his actions. However, these actions occurred *after* the parties executed the Promissory Note, which is the vehicle by which FCG obtained the funds. Considering the facts in the record and the totality of the circumstances, Mr. Marko has not

established by a preponderance of the evidence that at the time he executed the Promissory Note, Mr. Capena made false representations with an intent to deceive. Accordingly, his claim under §523(a)(2)(A) fails. This conclusion is consistent with the liberal construction of § 523(a) in favor of debtors that is compelled by Third Circuit case law. *See, e.g.*, *In re McCabe*, 856 F. App'x 430, 431 (3d Cir. 2021) (citing *In re Cohn*, 54 F.3d at 1113 and holding that exceptions to discharge are to be construed liberally in favor of debtors).

### D. Count II - § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides that a discharge under Section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "In order to except a debt from discharge under Section 523(a)(4) for fraud or defalcation in a fiduciary capacity, a plaintiff must prove the existence of '(i) a fiduciary relationship and (ii) that a fraud or defalcation occurred while the [debtor] acted in a fiduciary capacity.'" *In re Guarracino*, 575 B.R. 298, 310–11 (Bankr. D.N.J. 2017) (quoting *In re Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008)).

Ordinarily, a fiduciary relationship is established through an express or technical trust, or through state law. *See, id.* (collecting cases). Here, Mr. Marko has not set forth any facts that would suggest that a fiduciary relationship existed between the parties. Rather, Mr. Marko's testimony at trial establishes that the parties had a contractual relationship. This does not create the "fiduciary capacity" required for purposes of a nondischargeability claim under § 523(a)(4). *See In re Bayer*, 521 B.R. 491, 506 (Bankr. E.D. Pa. 2014) (explaining that "fiduciary capacity" is

12

narrowly construed in bankruptcy and that "§ 523(a)(4) is not intended to apply to an ordinary commercial or contractual relationship"). Accordingly, Count II of Mr. Marko's complaint fails.

### E. Count III - § 523(a)(6)

Nondischargeability under § 523(a)(6) requires "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998); *In re Pearman*, 432 B.R. 495, 500 (Bankr. D.N.J. 2010). Courts in our circuit have held that "§ 523(a)(6) is not intended to render nondischargeable debts arising from simple breaches of contract." *In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) (citing *In re Riso,* 978 F.2d 1151 (9th Cir. 1992); *In re Williams,* 362 B.R. 838, 840–841 (Bankr. N.D. Ohio 2006)). Even a knowing or intentional breach of contract does not ordinarily rise to the level of "willful and malicious." *See In re Catalan*, 590 B.R. 678, 684 (Bankr. E.D. Pa. 2018); *In re Reath*, 368 B.R. 415, 426 (Bankr. D.N.J. 2006). Rather, damages arising from breach of contract "can only be rendered nondischargeable under § 523(a)(6) to the extent that such breach was accompanied by tortious conduct." *In re Kamps*, 575 B.R. 62, 84 (Bankr. E.D. Pa. 2017) (collecting cases).

Here, Mr. Marko has not met his burden of establishing false statements or an intent to deceive, let alone demonstrated that Mr. Carpena engaged in any additional tortious conduct. Accordingly, his claim under § 523(a)(6) fails.

### IV.  Conclusion

In sum, the Court is presented with an unfortunate situation. Mr. Marko trusted Mr. Carpena and believed Mr. Carpena when he promised he would return Mr. Marko's investment

with interest. Mr. Carpena did not make good on that promise. However, that does not render the debt nondischargeable. The notarized Promissory Note does not impose a heightened duty—on either party—to follow through with the promises made therein. Instead, the parties' relationship is a contractual one. The terms of that contract did not put any restrictions or limitations on FCG's use of the loaned funds. Mr. Marko testified on redirect that he could have negotiated the terms of the contract but chose not to. The terms of the contract, combined with Mr. Marko's testimony and the record set forth at trial, indicate that Mr. Carpena merely breached the contract, which does not render his debt nondischargeable.

For the aforementioned reasons, the Mr. Marko's Complaint is denied in its entirety. The Court will enter an appropriate Order.

*Michael B. Kaplan*

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: December 16, 2022